IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Hyper Healing, LLC, and Trident Pain Center, LLC, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No. 2:19-cv-3583-BHH |
| Eric Shapiro, | ) ) ) | |
| Defendant, | ) ) ) | **ORDER** |
| v. | ) ) ) | |
| Dr. Joseph E. Nolan, | ) ) ) | |
| Third-Party Defendant. | ) ) | |
| _____ | ) | |

This matter is before the Court upon the motion for partial summary judgment filed by Plaintiff Hyper Healing, LLC, Plaintiff Trident Pain Center, and Third-Party Defendant Dr. Joseph E. Nolan (collectively referred to as "Plaintiffs"[1]). Defendant Eric Shapiro ("Shapiro" or "Defendant") filed a response opposing the motion, and Plaintiffs filed a reply. After review, and for the reasons set forth herein, the Court grants in part and denies in part Plaintiffs' motion.

## **BACKGROUND**

Defendant Shapiro founded Hyperheal Hyperbarics, LLC, in Maryland in 2007 and subsequently founded Hyperheal Hyperbarics, Inc., ("HHI") in Maryland in 2012. Shapiro

---

[1] Hyper Healing, LLC ("Hyper Healing"); Trident Pain Center, LLC ("Trident"); and Dr. Joseph E. Nolan ("Nolan") are separate and distinct parties, but their interests are aligned for purposes of their motion for partial summary judgment. Accordingly, for ease of reference the Court collectively refers to these parties as "Plaintiffs" in this order despite the fact that Dr. Joseph E. Nolan is a Third-Party Defendant.

worked for HHI from 2013 through 2016 as a hyperbaric oxygen therapy technician, and Shapiro remains a shareholder of HHI.

On December 18, 2013, Dr. Tommy Love ("Dr. Love"), from Utah, filed a trademark application with the United States Patent and Trademark Office ("USPTO") for "Hyperheal" and "Hyperheal O2." The USPTO ultimately issued notices of allowance for the Hyperheal trademark to Dr. Love in 2015, and on May 31, 2016, the USPTO issued the Hyperheal trademark and identified the first use as April 2014.

In 2016, Shapiro and HHI were prosecuted by whistleblowers on behalf of the federal government. *United States v. Hyperheal Hyperbarics, Inc., et al.*, Civil Action No. 1:16-cv-541-RDB (Feb. 25, 2016).

In October of 2016, HHI fired Shapiro. Shortly thereafter, on November 2, 2016, Shapiro filed an application with the USPTO to trademark "Hyperheal Hyperbarics, Inc.," alleging he had been using the mark since March 7, 2007, and that the first use in commerce was as early as May 11, 2012. On February 10, 2017, the USPTO sent Shapiro a notice of office action refusing the registration because it was likely to be confused with Dr. Love's existing trademark. Shapiro did not respond to the notice.

HHI rehired Shapiro in March of 2017. Upon rehiring Shapiro, HHI and Shapiro entered an employment agreement, pursuant to which Shapiro agreed to do several things, including:

> You hereby relinquish and transfer to [Hyperheal] *any and all ownership and other rights*, if any, that you have *in any intellectual property* (including without limitation trademarks, copyrights, and patents), social media accounts, . . . or other property, tangible or intangible, *that has ever been used in or with respect to the business operated by [Hyperheal]*, regardless of whether or not the property is currently in the name of [Hyperheal]; you will immediately take such steps (by, among other things, providing passwords

and access codes) as are necessary to provide [Hyperheal] with access to and complete control over all such property; and you will, at [Hyperheal's] request, sign such documents and take such other steps as may be necessary to confirm that [Hyperheal] is the owner of all such property and accounts and to give [Hyperheal] complete control exclusive control over such property and accounts, and you will not, without [Hyperheal's] express written consent, act as [Hyperheal's] representative or agent with respect to any such property or any other matter . . . .

. . .

You will immediately turn over, provide, and relinquish to [Hyperheal] all property, documents, and materials that have ever been used in [Hyperheal's] business and that are or may be in your possession, custody, or control. . . .

(ECF No. 46-4 at 5-6 (emphasis added).)  The employment agreement also provided that "[u]pon termination of this agreement for any reason, neither party shall have any further rights, duties or obligations under this agreement, except to carry out the provisions which contemplate performance after termination or expiration."  (*Id.* at 6.)

HHI again terminated Plaintiff on March 23, 2018.  On May 1, 2018, Shapiro filed a new application with the USPTO to trademark "Hyperheal Hyperbarics, Inc.," again stating that he had been using the mark since March 7, 2007, and alleging a first use in commerce as early as May 11, 2012.  Shapiro also approached Dr. Love and arranged to purchase Dr. Love's Hyperheal trademark, which was subsequently registered to Shapiro on May 16, 2018, and recorded with the USPTO.  Shapiro then amended his May 1 trademark application to indicate that he now owned Dr. Love's trademark, which would hopefully resolve and potential conflict issues.

On May 30, 2018, HHI filed a lawsuit against Shapiro in the Circuit Court for Baltimore County, alleging that Shapiro was in violation of the terms of his employment agreement among other claims.  Shapiro removed the case to the District of Maryland on

3

June 7, 2018. *See Hyperheal Hyperbarics, Inc. v. Shapiro*, No. 1:18-cv-1679 (D. Md.) ("the Maryland action" or "the Maryland district court action"). In mid-August of 2018, the district court held two days of hearings on HHI's motion for an injunction. Ultimately, the Maryland district court found that Shapiro violated the terms of his employment agreement in certain respects. The court also explained that "Shapiro had already agreed to relinquish all the Hyperheal intellectual property rights that he owned, and no reasonable interpretation of the [employment agreement's] termination clause allows him to reassert control over rights that he either had relinquished or was obligated to have relinquished," and the court "permanently enjoined [Shapiro] from asserting control over Hyperheal's intellectual property." (ECF No. 1-2 at 20, 22.)

In this action, which Plaintiffs filed on December 30, 2019, Plaintiffs allege that Shapiro approached them in 2017 and 2018, seeking employment and attempting to coerce Plaintiffs to buy two allegedly invalid and unenforceable federal trademark registrations and related website domain names for $100,000.00. Specifically, Plaintiffs allege that Shapiro formed the company, Hyperbaric Guru, LLC, to provide consulting services relating to medical hyperbaric therapy. Plaintiffs further allege that in 2017 Shapiro's partner solicited Plaintiff Trident Pain Center, LLC, to start a hyperbaric therapy practice and to use the Hyperheal-based marks and website domains in South Carolina and Florida; Plaintiff Hyper Healing, LLC, was formed in 2017, with its administrative office in Charleston, South Carolina, and multiple locations in Florida and plans to grow into South Carolina. Additionally, Plaintiffs allege that in 2018, Shapiro again attempted to provide consulting services to Plaintiffs and prepared and entered into a confidentiality agreement with Plaintiff Trident Pain Center, LLC, dated May 7, 2018. According to Plaintiffs, Shapiro asked to be

4

employed by either Plaintiff Trident Pain Center, LLC, or Plaintiff Hyper Healing, LLC. Ultimately, Plaintiffs contend that when Shapiro prepared the May 7 confidentiality agreement, he had already assigned any common law rights he may have owned in any Hyperheal-based marks to HHI pursuant to his employment agreement with HHI, as further evidenced by the Maryland district court's findings, and Plaintiffs also note that Shapiro had not yet purchased the registrations from Dr. Love when he prepared the May 7 confidentiality agreement. Plaintiffs claim that Shapiro made repeated threats to sue Plaintiffs and sent Plaintiffs a cease and desist letter in August of 2019, and that Plaintiffs have incurred attorneys' fees as a result of Shapiro's repeated threats. In this action, Plaintiffs seek a declaratory judgment that Shapiro's registrations are invalid and unenforceable based on fraud and abandonment and various other grounds.

In response to Plaintiffs' complaint, Shapiro first filed a motion to dismiss or to transfer, opposing this Court's exercise of personal jurisdiction. Shapiro also filed an action against Plaintiffs in the Middle District of Florida on June 3, 2020. This Court denied Shapiro's motion to dismiss or to transfer venue, and the Middle District of Florida court ultimately transferred the Florida action to this Court, where both actions now have been consolidated. Thus, in addition to Plaintiffs' claims against Shapiro, the Court currently has before it Shapiro's claims against Plaintiffs (and Third-Party Defendant Dr. Nolan) for (1) trademark infringement under 15 U.S.C. § 1114; (2) unfair competition and false designation of origin under 15 U.S.C. § 1125(a); (3) unfair competition and trademark dilution under 15 U.S.C. § 1125(c); (4) violation of Trade Secrets Act; (5) violation of the Florida Uniform Trade Secrets Act; (6) unfair competition; (7) breach of contract; (8) unjust enrichment; (9) fraudulent misrepresentation and fraudulent inducement; and (10) request

for preliminary and permanent injunction. (ECF No. 32.)

## STANDARD OF REVIEW

A court shall grant summary judgment if a party shows that there is no genuine dispute as to any material fact and the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *See Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).

## DISCUSSION

In their motion for partial summary judgment, Plaintiffs first assert that Shapiro admitted in the Maryland district court action that he relinquished and assigned to HHI any intellectual property rights that he may have come to own, in accordance with the terms of his employment agreement with HHI. In support of this argument, Plaintiffs cite Shapiro's testimony in the Maryland district court action, and Plaintiffs assert that Shapiro's prior admissions mean that he cannot now claim that he owns any intellectual property, which would include trade secrets, that he previously relinquished or ought to have relinquished to HHI under the terms of his employment agreement.

In response, Shapiro asserts that Plaintiffs' reliance on his testimony in the Maryland district court action is misplaced and that Plaintiffs have "cherry-picked lines of testimony

6

that were given in a different case regarding very different issues than the claims at issue here." (ECF No. 46 at 5.) Plaintiff asserts that domain names, social media accounts, and trademarks were the only intellectual property claimed by HHI in the Maryland district court action, and he asserts that "[a]t no point in the *Hyperheal Hyperbaric, Inc.* litigation were Mr. Shapiro's trade secrets mentioned as being assets assigned to HHI." (ECF No. 46 at 7.) Shapiro further asserts that Plaintiffs's argument misunderstands the terms of the employment agreement and that Plaintiffs have not produced any documentation to support that a transfer of the trade secrets occurred." (*Id.*)

After a thorough review of the record, the Court is not persuaded by Shapiro's arguments. Even leaving aside for a moment his specific testimony in the Maryland district court action, the fact remains that the plain language of the employment agreement that Shapiro signed before returning to work for HHI in 2017 clearly required him to, *inter alia*, "relinquish and tranfer to [HHI] *any and all ownership and other rights, if any, that you have in any intellectual property (including without limitation trademarks, copyrights, and patents),* social media accounts, . . . or other property, tangible or intangible, *that has ever been used in or with respect to the business operated by [Hyperheal]*, regardless of whether or not the property is currently in the name of [Hyperheal] . . . . (ECF No. 46-4 at 5 (emphasis added).) Shapiro now argues that the "intellectual property" referenced in the employment agreement does not include trade secrets, and that trade secrets were never specifically mentioned in the employment agreement, but the Court finds Shapiro's argument unavailing as it ignores the black-letter definition of intellectual property, which clearly includes trade secrets. *See Black's Law Dictionary* 930 (10th ed. 2014) (defining "Intellectual property" as "[a] category of intangible rights protecting commercially valuable

7

products of the human intellect" and explaining that "[t]he category comprises primarily trademark, copyright, and patent rights, *but also includes trade-secret rights*, publicity rights, moral rights, and rights against unfair competition") (emphasis added).  In other words, regardless of the fact that the Maryland district court action only involved the business name Hyperheal, Hyperheal trademarks, website domains, and social media accounts, Shapiro cannot escape the plain language of his employment agreement, which clearly required Shapiro to relinquish to HHI "*any and all ownership and other rights, if any, that you have in any intellectual property*" related to the business operated by HHI.  In this context, the Court finds that the broad reference to "any intellectual property" would certainly include trade-secret rights, and Plaintiff has not offered sufficient evidence to create a genuine dispute of material fact on this issue.  Thus, the Court agrees with Plaintiffs that, to the extent Shapiro attempts in this action to rely on intellectual property rights (which would include trade-secret rights) relating to the business operated by HHI and arising prior to his termination from HHI, Shapiro may not do so, because, as the Maryland district court succinctly stated, "Shapiro had already agreed to relinquish all the Hyperheal intellectual property rights that he owned, and no reasonable interpretation of the termination clause allows him to reassert control rights that he either had relinquished or was obligated to have relinquished."  (ECF No. 46-4 at 20.)

      Turning now to Shapiro's specific testimony in the Maryland district court action, the Court also agrees with Plaintiffs that Shapiro's statements constitute admissible admissions, and Shapiro cannot now avoid summary judgment by offering new statements that clearly contradict his prior statements.  Fed. R. Evid. 801(d)(2)(A).  Here, as Plaintiffs point out in their motion for partial summary judgment, Shapiro admitted in the Maryland

8

action that his employment agreement required him to transfer to HHI any and all ownership rights in any intellectual property rights. (ECF No. 45-10 at 55, 57; *see* ECF No. 45 at 7-8 (outlining Shapiro's testimony).)  Thus, the Court finds that Shapiro's testimony also supports the Court's finding that, as of his termination from HHI in March of 2018, Shapiro had effectively relinquished to HHI any and all intellectual property rights used in or with respect to the business operated by HHI that he may have personally owned at that time.  Thus, the Court grants Plaintiffs' motion for partial summary judgment as to this issue; however, as the district court in the Maryland action also stated, this conclusion "does not extend to property or rights that he might obtain after termination," as discussed in further detail below.  (ECF No. 46-4 at 20.)

Plaintiffs next assert that the trademark registrations that Shapiro purchased from Dr. Love in 2018, after his termination from HHI, are unenforceable because (1) the registrations were procured by Dr. Love's false affirmations of priority; (2) the registrations were abandoned when Dr. Love discontinued and retired from providing hyperbaric medical services; (3) the registrations were invalidly transferred to Shapiro in gross, separate and apart from any connection to Dr. Love's hyperbaric medical practice; and (4) the registrations were abandoned by Shapiro's non-use and inability to lawfully provide hyperbaric medical services, as well as his mere attempt to reserve rights and resell registrations at a profit.  (ECF No. 45.)

In response, Shapiro argues that genuine issues of material fact exist as to both whether Dr. Love procured the Hyperheal registrations through false affirmations of priority and whether Dr. Love discontinued using the registrations.  Shapiro argues that Dr. Love's intent is relevant, that questions of intent are for a jury, and that the record contains no

evidence that Dr. Love intended to deceive the USPTO. In addition, Shapiro argues that the testimony in the Maryland district court action does not demonstrate that the registrations were invalidly transferred in gross because the Maryland district court action involved different issues. Shapiro also argues that Plaintiffs have not demonstrated that Shapiro has ceased using the trademarks at issue or that Shapiro intends not to use them in the near future.

After a thorough review of the record, including the testimony from the Maryland district court action, the Court agrees with Shapiro that genuine disputes of material fact exist regarding the enforceability of the trademark registrations that Shapiro purchased from Dr. Love in 2018 following his final termination from HHI. Stated plainly, although Plaintiffs raise a number of well-articulated arguments, the Court agrees with Shapiro that resolution of the issues raised by Plaintiffs requires factual findings and credibility determinations that make summary judgment inappropriate, and the Court notes that these questions were not definitively resolved in the Maryland district court action. *See* ECF No. 46-4 at 27-28 (finding material disputes of fact related to the validity of the federal trademarks "that must be determined by a jury before Shapiro's ownership claims can be resolved"). Accordingly, the Court denies this portion of Plaintiffs' motion for partial summary judgment.

## **CONCLUSION**

Based on the foregoing, the Court hereby grants in part and denies in part Plaintiffs' motion for partial summary judgment (ECF No. 45). Specifically, the Court grants Plaintiffs' motion to the extent that the Court finds that Shapiro cannot rely upon any alleged intellectual property rights, including trade-secret rights, that he had relinquished or ought

to have relinquished to HHI at the time of his termination, pursuant to the specific terms of his employment agreement with HHI. However, the Court denies Plaintiffs' motion as to whether the trademark registrations that Shapiro purchased from Dr. Love in 2018 are enforceable, finding that genuine disputes of material fact exist as to the validity of the federal trademarks and Shapiro's ownership interest in them.

In light of delays caused by the COVID-19 pandemic, the Court directs the parties to confer and submit a proposed amended scheduling order, or to submit separate proposed amended scheduling orders if they are unable to agree on future deadlines.[2] Also, the parties shall inform the Court as to whether they have already attempted to mediate or when they will attempt to mediate the remaining issues in this case.

**AND IT IS SO ORDERED.**

/s/Bruce H. Hendricks
United States District Judge

September 29, 2021
Charleston, South Carolina

---

[2] As a practical matter, the Court notes that it is not currently conducting jury trials due to the risks associated with the recent spike in COVID-19 transmission rates in the community. When it is safe to resume jury trials, criminal jury trials will take priority over civil jury trials due to the Speedy Trial Act and other constitutional concerns. Because this Court has a large backlog of pending criminal jury trials, a trial of this case is not likely to occur before Spring of 2022 at the earliest.